# EDWARD STONE LAW




SDNY
UMENT
CTRONICALLY FILED
#: _____
DATE FILED: 9/17/19

RECEIVED
SEP 16 2019
CHAMBERS OF
JUDGE MARRERO

**VIA FEDERAL EXPRESS**

September 12, 2019

The Honorable Victor Marrero
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street, Suite 1040
New York, NY 10007

Re: Louise Taylor and Phillip Taylor v. New York Life Insurance Company, et al.
(Case No. 1:19-cv-06830)

Your Honor:

Enclosed as per your Individual Practices, is a copy of our response to New York Life's "Rule II.B" letter received by our firm on September 6, 2019.

Sincerely,

Edward S. Stone

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiffs.

SO ORDERED.

9-16-19
DATE             VICTOR MARRERO, U.S.D.J.

---

175 W. Putnam Avenue
2nd Floor
Greenwich, CT 06830
Tel (203) 504-8425

Edward Stone Law P.C.
Email: eddie@edwardstonelaw.com
www.EdwardStoneLaw.com
Fax (203) 348-8477

300 Park Avenue
12th Floor
New York, NY 10022
Tel (646) 933-3143

# EDWARD STONE LAW

**VIA EMAIL and USPS FIRST-CLASS MAIL**

September 12, 2019

Stephen Harris, Esq.
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103

> Re: Louise Taylor and Phillip Taylor v. New York Life Insurance Company, et al.
> (Case No. 1:19-cv-06830)

Dear Mr. Harris:

In accordance with Rule II.B of the Hon. Victor Marrero's Practice Rules, we write on behalf of Plaintiffs in response to your letter of September 4, 2019 (received on September 6, 2019).

On December 19, 1989, in settlement of a personal injury lawsuit, Plaintiffs executed a Settlement Agreement and Release ("**SAR**"). A condition precedent to the execution of the SAR was that New York Life Insurance Company ("**NYL**") issue an annuity contract to fund the periodic payments set forth in the SAR. That same day, New York Life Insurance and Annuity Corporation ("**NYLIAC**") assumed the obligations of the settling defendants under a uniform qualified assignment ("**UQA**"), novating the SAR, and the settling defendants were fully released from any further obligations to the Taylor family. NYL and NYLIAC are sometimes collectively referred to herein as "**New York Life**." The SAR contained a very specific spend-thrift provision that denied anyone the "power" to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise."

Plaintiffs Have Standing to Assert Their Claims
As parties to the SAR entitled to receive the bargained for benefit of the spend-thrift provisions contained therein, Mr. and Mrs. Taylor are litigating their *own* claims, for their *own* injuries. *Frontier Communs. of NY, Inc. v. IBEW, Local Union 503,* No. 07-cv-10327, 2008 US Dist. LEXIS 37213 *8 (S.D.N.Y. May 6, 2008) (It is "axiomatic" that a party to an agreement has standing to sue....). Accordingly, Plaintiffs have standing to assert claims against New York Life.

Plaintiffs agreed to the terms of the SAR to protect specifically designated periodic payments from dissipation. New York Life was written into the SAR because all parties to the SAR believed that NYL was well suited, well capitalized, and well regarded enough to be entrusted with the periodic payment obligations. Plaintiffs' could have insisted upon a lump sum settlement. Instead, Plaintiffs chose a structured settlement annuity with New York Life based on their belief that New York Life would honor its commitment to make periodic payments in accordance with the SAR.

Instead, of protecting Plaintiffs and living up to their contractual obligations, New York Life knowingly and willingly consented to patently illegal factoring transactions for its own benefit that violated, *inter-alia*, the terms of the SAR and the Dismissal Order in the DeLonghi case, 26 U.S.C.

---

| 175 W. Putnam Avenue | Edward Stone Law P.C. | 300 Park Avenue |
| 2nd Floor | Email: eddie@edwardstonelaw.com | 12th Floor |
| Greenwich, CT 06830 | www.EdwardStoneLaw.com | New York, NY 10022 |
| Tel (203) 504-8425 | Fax (203) 348-8477     / | Tel (646) 933-3143 |

§ 5891, and Va. Code Ann. § 59.1-475 et seq. (the "**Virginia SSPA**"). Plaintiffs have suffered harm as a direct and proximate result of New York Life's improper actions.

NYLIAC Assumed the Payment Obligations of the SAR, Including the Spend-thrift Restrictions
Under the UQA, NYLIAC assumed all of the payment obligations of the settling defendants contained in the SAR, including the spend-thrift restriction on the "power" to sell, mortgage, encumber or anticipate the Periodic Payments, and is contractually obligated to Plaintiffs.

The "magic language" required in a UQA and personal injury settlement agreement for both the settling plaintiff and the insurance company to receive favorable tax treatment is: "such periodic payments cannot be <u>accelerated, deferred, increased, or decreased</u> by the recipient of such payments." (emphasis added). 26 U.S.C. § 130 (c)(2)(B).

The spend-thrift "power" language in the SAR goes well beyond what is required under Section 130 and was specifically negotiated by the parties for the protection of the Plaintiffs, not for the convenience of Defendants. [DE 1, ¶ 27, Ex. C]. The provision reads as follows:

> Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any payee; <u>nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.</u> (emphasis added). *See* SAR ¶ 4, DE 1-3 at p. 15.

This spend-thrift provision is integrally related to the payment obligations of the SAR and both must be given meaning. *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-136, 452 S.E.2d 659 (1995) (internal citations omitted). To read one provision without the other would render the specifically negotiated and court approved spend-thrift provision of the SAR meaningless the very day the SAR was executed. Such a result borders on the absurd.

New York Life misinterprets the holding in *Matter of 321 Henderson Receivables Origination LLC (Logan)*, 856 N.Y.S.2d 817 (2007). The *Logan* court addressed the threshold question of "whether there was any basis upon which" it could approve the transfer, and answered in the negative, stating: "The court, thus, finds that in view of the restrictive language in the settlement agreement whereby Ayana Logan gave up her '***power*** to sell, mortgage, encumber or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise,' there is no legal basis upon which this court can approve the transfer agreement pursuant to the statute." *Id.* at 819-820 (emphasis added). *Logan* is consistent with Plaintiffs' claims in this case.

Tortious Interference
Contrary to your assertions, Plaintiffs' had an interest in the periodic payments under the SAR beyond the date of the settlement. To find otherwise would render the court approved SAR meaningless for all purposes other than your clients' convenience. Plaintiffs have alleged the existence of the SAR, your clients' knowledge of the SAR, and their specific, ongoing, improper actions that undermine the purpose of the SAR and cause them harm. *See Chaves v Johnson*, 230 Va. 112, 335 S.E.2d 97(1985) (Prima facie showing of tortious interference is met by showing the existence of a valid contractual relationship or business expectancy; knowledge of the relationship

| 175 W. Putnam Avenue | Edward Stone Law P.C. | 300 Park Avenue |
| 2nd Floor | Email: eddie@edwardstonelaw.com | 12th Floor |
| Greenwich, CT 06830 | www.EdwardStoneLaw.com | New York, NY 10022 |
| Tel (203) 504-8425 | Fax (203) 348-8477 | Tel (646) 933-3143 |

or expectancy on the part of the interferor; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and damage to the party whose relationship or expectancy has been disrupted.).

Breach of Fiduciary Claims Appropriate in Situations of "Special Confidence"
"A fiduciary relationship exists in all cases when special confidence has been reposed in who in equity and good conscience is bound to act in good faith and with due regard for the interests of one reposing the confidence. *Horne v. Holley*, 167 Va. 234, 188 S.E. 169 (1936)." [DE 1, ¶ 111]. The spend-thrift "power" language in the SAR was freely negotiated and included therein in 1989 to protect both Mr. and Mrs. Taylor and their then minor son. [DE 1, ¶¶ 25, 27, Ex. C]. In contrast to the plaintiff in *Salkey v. State Farm Life Ins. Co.*, 2019 NY Slip Op 31240(U) (Sup. Ct., Broome Cty. 2019), here Plaintiffs made the specific allegations required for a breach of fiduciary duty claim. Plaintiffs have alleged that: a New York Life annuity was a condition precedent to the SAR; NYL had a duty to make periodic payments to the payee, and no-one else; the SAR contained spend-thrift provisions designed to protect the periodic payments from dissipation; Plaintiffs reasonably relied upon NYL to enforce this spend-thrift provision; and Plaintiffs were damaged by NYL's improper consent to illegal transfers. [DE 1, ¶¶ 108-123]. Defendants' assertion that the Virginia SSPA does not require them to "support, oppose or otherwise respond" to a transfer petition is of no consequence here. NYL's duty to Mr. and Mrs. Taylor arose when New York Life agreed to act as the steward of the Taylor structured settlement and was paid close to $2 Million take on this obligation. NYL cannot hide behind a statutory regime to legitimize, or defend, its improper consent to illegal transfers. *See Logan* at 820.

Plaintiffs' Claims Are Not Time Barred
Plaintiffs have alleged on ongoing breaches of fiduciary duty and contract. Defendants claim that the last alleged breach occurred in June 2014. Plaintiffs allegations are to the contrary; Plaintiffs allege that breaches of contract and fiduciary duty occur each and every time New York Life pays anyone other than Terrence E. Taylor. [DE 1, ¶ 62]. Where there is a series of continuing wrongs, the continuing wrong doctrine tolls the limitation period such that it is "deemed to have accrued on the date of the last wrongful act." *Harvey v Metro. Life Ins. Co.*, 34 A.D.3d 364 (1st Dept 2006); *Palmeri v Willkie Farr & Gallagher LLP*, 156 A.D.3d 564 (1st Dept 2017); *Nuss v Sabad*, Case No. 7:10-CV-0279, 2016 US Dist. LEXIS 98529 (N.D.N.Y. July 28, 2016). New York Life's "defense" of laches is not applicable for the similar reasons.

Upon review of your analysis of Virginia caselaw, we will amend our complaint to omit our promissory estoppel claim, with the consent of the Court.

Sincerely,

Edward S. Stone
cc: Hon. Victor Marrero (Via Federal Express)

175 W. Putnam Avenue
2nd Floor
Greenwich, CT 06830
Tel (203) 504-8425

Edward Stone Law P.C.
Email: eddie@edwardstonelaw.com
www.EdwardStoneLaw.com
Fax (203) 348-8477

300 Park Avenue
12th Floor
New York, NY 10022
Tel (646) 933-3143