UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LOUISE AND PHILLIP TAYLOR,          :
                                    :
                    Plaintiffs,     :
                                    :
        - against -                 :
                                    :
NEW YORK LIFE INSURANCE COMPANY     :
AND NEW YORK LIFE INSURANCE AND     :
ANNUITY CORPORATION,                :
                                    :
                    Defendants.     :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: February 9, 2021

19 Civ. 6830 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Louise and Phillip Taylor ("Plaintiffs" or "Taylors") commenced this action by a complaint filed against Defendants New York Life Insurance Company ("NYLIC") and New York Life Insurance and Annuity Corporation ("NYLIAC," and collectively with NYLIC, "Defendants") for breach of contract, breach of implied contract, promissory estoppel, tortious interference with contract, and breach of fiduciary duty. (See "Complaint," Dkt. No. 1, ¶¶ 64-126.)

Pending before the Court is a pre-motion letter submitted by Defendants regarding their anticipated motion to dismiss. (See "Motion," Dkt. No. 11.) The Court also received a letter response from Plaintiffs. (See "Opposition," Dkt. No. 12). The Court construes Defendants' pre-motion letter as a motion to dismiss the Complaint pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Motion is GRANTED.

## I.   BACKGROUND

A.   FACTS[2]

Plaintiffs are a married couple residing in Virginia. In April 1988, Louise Taylor activated a defective space heater that caused a fire in Plaintiffs' home. As a result of the fire, Plaintiffs' son, Terrence Taylor ("Terrence"), suffered severe and permanent injuries, including scars on his face and limbs, the loss of his right leg and several digits, and limited cognitive abilities.

The Taylors sued the manufacturer of the space heater in 1989. That litigation (the "DeLonghi Litigation") was resolved through a structured settlement agreement, which provided for a lifetime of periodic payments to Terrence paid out on an annual and monthly basis, increasing annually. A condition precedent of the settlement that was very important to the Taylors, their counsel, and the trial court was that

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The factual background below, except as otherwise noted, derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the Complaint.

the defendants of the DeLonghi Litigation use a NYLIC annuity policy to fund the periodic payments. Louise Taylor "took great solace" in knowing that NYLIC would be the steward of her son's periodic payments given NYLIC's professional reputation. (See Complaint ¶ 23.)

The settlement agreement entered into in the DeLonghi Litigation included an anti-assignment provision. This provision is titled "Payee's Rights to Payments" and states:

> The Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any payee; nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

(Dkt. No. 1-3 ¶ 4; see also Complaint ¶¶ 24-25.) This provision was freely negotiated by the parties to the settlement and included specifically to protect the Taylors. Louise Taylor was told that "nobody could touch the payments intended for her baby" and that "we are going with NY Life because they are an A plus company with the best reputation for protecting serious injury victims like Terrence." (Complaint ¶ 26.) These assurances influenced Louise Taylor to settle rather than proceed to trial.

The defendants in the DeLonghi Litigation subsequently paid the amount of the settlement to NYLIAC, which then purchased an annuity contract from NYLIC. On December 19,

1989, NYLIAC was assigned all of the obligations imposed on the defendants of the DeLonghi Litigation under the settlement agreement.

Beginning in 2012, Terrence "fell prey to the high-pressure sales tactics of several factoring companies."[3] (Complaint ¶ 40.) Over the course of twenty-four months, Terrence sold each one of his period payments, as well as his life-contingent payments through 2042, in ten factoring transactions.

Various states, including Virginia, have enacted laws to protect tort victims from factoring transactions require that all transfers of structured settlement periodic payments be authorized in advance by a court. According to Plaintiffs, this legislation also requires that factoring companies provide notice of any transfer to interested parties, including the annuity issuer and annuity obligor, informing them of their opportunity to oppose, support, or otherwise respond to the proposed transfers.

In Terrence's case, nine of the ten transfer petitions were filed in Portsmouth Circuit Court in Virginia, "a district known to the factoring companies (and insurance

---

[3] A factoring company is one that purchases deferred payments for a discounted amount; this usually "results in the annuity recipient receiving a lump sum payment from the factoring company for far below the long-term value of the annuity." See Sanders v. JGWPT Holdings, Inc., No. 14 Civ. 9188, 2016 WL 4009941, at *2 (N.D. Ill. July 26, 2016).

companies like NY Life) to be a court that would 'rubber stamp' transfer petitions unless opposed by insurers like NY Life." (Complaint ¶ 42.) Defendants NYLIC and NYLIAC received notice of each of the ten petitions, and one or both companies received fees from factoring companies in exchange for their consent to each of the transactions. Defendants knew that the transactions violated the anti-assignment provision of the settlement from the DeLonghi Litigation, but NYLIC and NYLIAC failed to oppose the petitions. Louise Taylor notified NYLIC of the improper factoring transactions before the last periodic payments were sold, but NYLIC refused to intercede and informed Louise that because Terrence was no longer a minor, she could not prevent the sale.

After consenting to eight transfers without contacting Plaintiffs or Terrence, NYLIC required Terrence sign a stipulation waiving the anti-assignment provision in connection with a transfer petition filed on March 18, 2014. Although the stipulation was purportedly signed by Terrence, he has no recollection of signing it and believes his signature may be a forgery. Terrence was not represented by counsel at the time of signing. NYLIC also required Terrence sign an identical stipulation in connection with a June 2014 petition, the last petition at issue.

In total, factoring companies took $11,000,000 in periodic structured settlement payments from Terrence. Upon information and belief, it is alleged that NYLIC has invested in structured settlement securitizations -- including those issued by the same factoring company that filed six transfer petitions and cost Terrence $2,745,650 in payments.

Following these events, Terrence was forcibly evicted from his home in West Virginia in June 2014. Plaintiffs have been providing housing for their son since that time.

B.   CAUSES OF ACTION

The Complaint includes five causes of action. First, Plaintiffs allege that NYLIAC breached the anti-assignment provision of the settlement agreement from the DeLonghi Litigation, the obligations of which NYLIAC assumed. Plaintiffs specifically claim that "[a]s the owner and obligor under the Annuity Policy, [NYLIAC] was obligated to enforce the anti-assignment provision of the Settlement Agreement for the benefit of Plaintiffs." (Complaint ¶ 72.)

Second, Plaintiffs allege breach of implied contract against NYLIC because it "was the issuer of the Annuity Policy and had knowledge of the Settlement Agreement and the Qualified Assignment [by which NYLIAC assumed the DeLonghi Litigation defendants' obligations] and knowingly breached

6

the anti-assignment provisions of these agreements."
(Complaint ¶ 84.)

Third, Plaintiffs' Complaint includes a claim for
promissory estoppel. In its Opposition, however, Plaintiffs
concede that this claim is not cognizable under Virginia law
and therefore agreed to withdraw it.[4] (Dkt No. 12, at 4.)

Fourth, Plaintiffs allege that NYLIC tortiously
interfered with the settlement agreement. Plaintiffs' claim
centers on the allegations that NYLIC required Terrence sign
stipulations waiving the anti-assignment provision in
connection with the March and June 2014 transfer petitions.

Fifth, Plaintiffs allege that NYLIC breached the
fiduciary duty owed to Plaintiffs. This duty stemmed from
NYLIC's "unique background, experience, and knowledge of how
structured settlements are designed to protect injury
victims, and by virtue of how important NY Life's role was in
effectuating the Settlement Agreement." (Complaint ¶ 110.)
Plaintiffs claim that NYLIC violated its fiduciary duty by
choosing to collect administrative fees from the transfers
and "extort[ing]" stipulations from Terrence instead of
speaking up to protect the interests of Terrence and
Plaintiffs. (Id. ¶ 124.)

---

[4] Based on this concession, the Court will omit analysis of the promissory-
estoppel claim in the remainder of this Decision.

C.   <u>THE PARTIES' ARGUMENTS</u>

Defendants argue that dismissal of all claims is appropriate either for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim upon which relief may be granted under Rule 12(b)(6). With respect to its Rule 12(b)(1) arguments, Defendants contend that Plaintiffs lack standing to assert any claims against Defendants because there is no relationship between Defendants and Plaintiffs. Defendants also argue that all of Plaintiffs' claims are time barred.

With respect to its Rule 12(b)(6) arguments, Defendants assert that the claims fail as a matter of law. Defendants argue that the breach-of-contract and breach-of-implied-contract claims fail because: (1) no contractual relationship exists between Plaintiffs and Defendants; (2) anti-assignment clauses are for the obligor's (here NYLIAC's) benefit and can be waived by the obligor; and (3) there can be no breach of implied contract because the annuity policy defines NYLIC's obligations. Defendants argue that the tortious-interference claim fails because: (1) Plaintiffs have no interest in the periodic payments; and (2) Defendants did not interfere with any of Plaintiffs' rights simply by allowing a court to decide whether to approve the transfers. Finally, Defendants argue

that the breach-of-fiduciary-duty claim fails because there was no fiduciary relationship between Plaintiffs and NYLIC.

Plaintiffs respond by arguing that they have standing, because NYLIAC assumed the obligations of the DeLonghi Litigation defendants and because Plaintiffs were injured by being denied the benefit of their bargain. They also contend that their claims are timely, as the violations at issue "occur each and every time New York Life pays anyone other than Terrence E. Taylor." (Opposition at 4.)

Plaintiffs also argue that the claims for breach of contract, breach of implied contract, tortious interference with contract, and breach of fiduciary duty have been sufficiently pled. Plaintiffs contend that they did have a contractual relationship with Defendants and that the anti-assignment provision should be interpreted as benefiting Plaintiffs, not NYLIAC, because it is integrally related to NYLIAC's payment obligations. Plaintiffs further argue that the tortious-interference claim has been adequately pled because they have an interest in the payments and alleged existence of the settlement agreement; Defendants' knowledge of the agreement; and specific, ongoing, and improper actions that undermine the purpose of that agreement. Lastly, Plaintiffs argue that their breach-of-fiduciary-duty claim should not be dismissed because they alleged that a fiduciary

relationship existed by virtue of the special confidence was reposed in NYLIC and the fact that NYLIC acted as the "steward" of the structured settlement. (Opposition at 4.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First

Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III.  **DISCUSSION**

The Court grants the Motion and dismisses the Complaint without prejudice because Plaintiffs have, at this stage, failed to meet their burden under Rule 12(b)(6). As a result, the Court has determined that it need not address Defendants' arguments regarding standing and the statute of limitations at this point.

A.   BREACH OF CONTRACT

Under Virginia law, which governs the settlement agreement pursuant to the contract's choice-of-law provision (see Dkt. No. 1-3, at 13), a plaintiff claiming breach of contract must allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004).

The Court understands Plaintiffs' claim to be that NYLIAC breached its contractual obligations by failing to enforce the anti-assignment provision and by allowing the transfers to proceed without objection, investigation, or other scrutiny. But even taking Plaintiffs' allegations of NYLIAC's failure to intervene as true, the Court finds no provision of the settlement agreement that gives rise to any duty on NYLIAC's part to oppose, investigate, or otherwise scrutinize the transfers. And the Court is not of the view that such an obligation could arise from the implied duty of good faith and fair dealing.

There is no provision in the settlement agreement that requires NYLIAC to oppose or investigate Terrence's attempted transfers. Plaintiffs seek to rely on the anti-assignment provision of the agreement, but an anti-assignment provision is typically "for the benefit of the obligor." Restatement (Second) of Contracts § 322. It is true that this default assumption does not apply if "a different intention is manifested," id., and Plaintiffs have at least a colorable argument that the intent to benefit Plaintiffs and Terrence is manifest in the title of the anti-assignment provision, which reads "Payee's Rights to Payments." (Dkt. No. 1-3 ¶ 4.) But even assuming that the provision was included for their benefit rather than for the obligor's, the Court is not

persuaded that the anti-assignment language can be interpreted to impose affirmative obligations of objecting to, investigating, or otherwise intervening in Terrence's assignment attempts.[5] The Court has found no authority supporting such an interpretation, and Plaintiffs have provided none.

Nor can the implied duty of good faith and fair dealing give rise to an obligation to intervene in the assignment attempts. Virginia courts have refused to use the implied duty of good faith and fair dealing to read new obligations into a contract. See, e.g., Ward's Equip. v. New Holland N. Am., Inc., 493 S.E.2d 516, 520 (Va. 1997) ("Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.").

At least one other court dealing with a factually similar case reached a similar conclusion. In Cordero v. Transamerica Annuity Service Corp., 452 F. Supp. 3d 1292, 1296-97 (S.D. Fla. 2020), plaintiff Cordero was, like Terrence, a beneficiary of a structured settlement agreement who then

---

[5] Typically, when a party to a contract attempts to assign its benefits or obligations, the nonassigning party may sue for breach of contract. See Restatement (Second) of Contracts § 322 (noting that a "contract term prohibiting assignment of rights under the contract . . . gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective").

sold his monthly payment rights to factoring companies in exchange for reduced lump-sum payments. Cordero alleged that the legal owner and servicer of the annuity contract, Transamerica, violated the implied duty of good faith and fair dealing by allowing the transfers to proceed without investigation or other protection. Id. at 1300. The district court identified no case obligating an annuity issuer to investigate a proposed transfer and held that under New York law, it was impermissible to impose a new obligation to do so through the implied duty of good faith and fair dealing. Id. at 1302. Although not binding precedent, this Court finds Cordero to be persuasive authority given that court's legal reasoning and the similarities between New York law and Virginia law with regard to the implied duty of good faith and fair dealing.

For these reasons, the Court concludes that, under Virginia law, there is no explicit or implied contractual obligation stemming from the settlement agreement requiring NYLIAC to investigate, oppose, or otherwise intervene in Terrence's assignment attempts. Therefore, dismissal of Plaintiffs' breach-of-contract claim is appropriate.

B.   BREACH OF IMPLIED CONTRACT

As an initial matter, the choice-of-law rules of the forum state, New York, govern the determination of which

14

state's substantive law regarding the breach of implied contract claim applies in this diversity action. See, e.g., Alonso v. Saudi Arabian Airlines Corp., No. 98 Civ. 7781, 1999 WL 244102, at *5 (S.D.N.Y. Apr. 23, 1999). In contract cases, the "center of gravity" or "grouping of contacts" analysis is applied to determine which state's law governs. GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 383 (2d Cir. 2006) (citations omitted). Relevant factors in this analysis include "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Id. (citations omitted). Here, because New York is NYLIC's principal place of business, where NYLIC issued the annuity policy, and presumably from where payments would be made to Terrence, the Court finds that New York law should apply. Cf. id. (noting that with disputes involving insurance policies, New York courts have looked at factors such as where the policy was issued and delivered, the location of the broker or agent placing the policy, and the insurer's place of business).

"Under New York law, a contract implied in fact may result as an inference from the facts and circumstances of the case, though not formally stated in words, and is derived from the presumed intention of the parties as indicated by

their conduct." Leibowitz v. Cornell Univ., 584 F.3d 487, 506-07 (2d Cir. 2009) (internal quotation marks and alterations omitted). An implied contract requires "consideration, mutual assent, legal capacity and legal subject matter." Id. at 507.

Plaintiffs allege that NYLIC breached its implied contractual obligations to Plaintiffs because it was obligated to make payments to Terrence under the annuity policy issued and because "[NYLIC] was the issuer of the Annuity Policy and had knowledge of the Settlement Agreement and the Qualified Assignment [by which NYLIAC assumed the DeLonghi Litigation defendants' obligations] and knowingly breached the anti-assignment provisions of these Agreements." (Complaint ¶¶ 83-84.) Defendants argue that this claim fails because the annuity policy at issue defines NYLIC's obligations with respect to Terrence's payments. (Motion at 3.)

The Court is not persuaded that an implied contract exists between the parties based on the allegations in the Complaint. First, New York courts have held that a "cause of action predicated on a theory of implied contract or quasi-contract is not viable when there is an express agreement that governs the subject matter underlying the action." Gym Door Repairs, Inc. v. Astoria Gen. Contracting Corp., 42

N.Y.S.3d 381, 286 (App. Div. 2016). This is true "even if, as here, one of the parties to the claim is not a party to the contract." Lee v. Kylin Mgmt. LLC, No. 17 Civ. 7249, 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019); see also Allenby, LLC v. Credit Suisse, AG, 25 N.Y.S.3d 1 (App. Div. 2015) (noting that an unjust enrichment claim was properly dismissed because express contracts governing the subject of that claim existed regardless of the fact that the "contracts are between defendants and the nonparty borrowers/real estate developers, not between defendants and plaintiffs"). Thus, to the extent that Plaintiffs allege that NYLIC breached an implied contract by failing to make payments to Terrence under the annuity policy or settlement agreement, such a claim fails as a matter of law.

Even were this not the case, Plaintiffs have not alleged any facts from which the Court can infer the existence of a contract between NYLIC and Plaintiffs. It is not clear how NYLIC and Plaintiffs mutually assented to an agreement between them simply because NYLIC issued an annuity policy to NYLIAC and had knowledge of the settlement agreement and NYLIAC's assumption of obligations from that agreement. Nor does the Complaint make apparent what constituted consideration in an agreement between NYLIC and Plaintiffs. Therefore, even accepting Plaintiffs' factual allegations as

true, there are not enough facts to establish that an implied contract existed. Given these inadequacies, dismissal of the breach of implied contract claim is warranted.

C.    BREACH OF FIDUCIARY DUTY

For tort claims, "New York applies an 'interest analysis' generally applying the law of the jurisdiction with the greatest interest in the specific issue under consideration," a determination made based on the "domicile of the parties and the place where the tort occurred." See Caudle v. Towers, Perrin, Forster & Crosby, Inc., 580 F. Supp. 2d 273, 280 (S.D.N.Y. 2008). In the instant case, although Defendants are entities with their principal places of business in New York (Complaint ¶¶ 3-4), Plaintiffs are residents of Virginia (id. ¶ 2), the settlement agreement was approved in Virginia (see "Exhibit 2," Dkt. No. 1-3, at 1), and the transfers were approved in Virginia (Complaint ¶ 42). Moreover, the harm from the alleged tort -- that is, the harm sustained in having to care for Terrence -- was felt in Virginia. For these reasons, the Court concludes that Virginia has the greatest interest in applying its law to the issue at hand. See Rosenberg v. Pillsbury Co., 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989) (noting that the state with the greatest interest in applying its law is determined by "the

parties' domiciles and the locus of the tort," meaning "where [the] damage was sustained").

Under Virginia law, "[e]vidence of advice and counsel in business matters involving a certain degree of trust is necessary to show a fiduciary relationship." Oden v. Salch, 379 S.E.2d 346, 351 (Va. 1989). Therefore, "Virginia courts recognize fiduciary relationships between an attorney and client, an agent and principal, a trustee and cestui que trust, parent and child, siblings, and caretaker and invalid." Rossmann v. Lazarus, No. 08 Civ. 316, 2009 WL 87583, at *9 (E.D. Va. Jan. 9, 2009). But relationships such as that of a banker and borrower, mortgagor and mortgagee, or customer and lender do not constitute fiduciary relationships absent extraordinary circumstances. Id. (listing cases). And courts have held that when the parties' "relationship was defined entirely by contract," there is no fiduciary relationship. Id.; see also PRC Realty Sys., Inc. v. Nat'l Ass'n of Realtors, Inc., 766 F. Supp. 453 (E.D. Va. 1991) (holding that no fiduciary relationship arose from an agreement negotiated at arm's length).

Plaintiffs assert that a fiduciary relationship existed between them and NYLIC by virtue of the special confidence and trust that Plaintiffs reposed in NYLIC. Defendants argue that no fiduciary relationship existed between Plaintiffs or

Terrence, because at most, Terrence has only the rights of a general creditor.

The Court is not persuaded that Plaintiffs have sufficiently alleged a fiduciary relationship existed. Although Plaintiffs allege that they placed confidence and trust in NYLIC, this confidence alone is not enough to establish a fiduciary relationship. Plaintiffs have not alleged that Defendants provided "advice and counsel in business matters involving a certain degree of trust." <u>Oden</u>, 379 S.E.2d at 351. Indeed, there are no allegations in the Complaint suggesting that the relationship was anything but one "defined entirely by contract." <u>Rossmann</u>, 2009 WL 87583, at *9. For these reasons, the Court concludes that dismissal of Plaintiffs' breach-of-fiduciary-duty claim is warranted. <u>Cf.</u> <u>Cordero</u>, 452 F. Supp. 3d at 1303 (holding that there was no fiduciary relationship between Cordero and Transamerica because there were no allegations of dependence on Transamerica or that Transamerica undertook to protect, counsel, or advise Cordero).

D.   <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

It is less clear whether Virginia law or West Virginia law applies to Plaintiff's tortious-interference claim. Although Plaintiffs are residents of Virginia and the claim pertains to the settlement agreement, the alleged tort --

requiring Terrence sign the stipulations -- seems to have occurred in West Virginia based on the allegation that the stipulation at issue "was also purportedly signed by Terrence Taylor in front of a West Virginia notary." (Complaint ¶ 52.) At this point, however, the Court need not decide whether Virginia or West Virginia law applies, as the claim is insufficiently pled under either state's law on tortious interference.

In both states, the elements of a claim for tortious interference with contractual relations are typically (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor;[6] (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) damages. See Schaecher v. Bouffault, 772 S.E.2d 589, 602 (Va. 2015); Hatfield v. Health Mgmt. Assocs. of W. Va., 672 S.E.2d 395, 398 (W. Va. 2008). Similarly, both states look to the Restatement (Second) of Torts in determining what constitutes interference. See,

---

[6] West Virginia law does not explicitly list knowledge of the contract as an element, though it seems knowledge is nonetheless a requirement to establish a prima facie case of tortious interference. See, e.g., Antero Res. Corp. v. EQT Prod. Co., No. 17 Civ. 3, 2019 WL 10888223, at *4-5 (W. Va. Cir. Ct. Jan. 11, 2019) (granting summary judgment to the plaintiff on its tortious-interference claim in part because the defendant's actual or constructive knowledge of the contract had been established).

e.g., Tiernan v. Charleston Area Med. Ctr., Inc., 506 S.E.2d
578, 591 n.20 (W. Va. 1998); Maximus, Inc. v. Lockheed Info.
Mgmt. Sys. Co., Inc., 493 S.E.2d 375, 414-15 (Va. 1997); C.W.
Dev., Inc. v. Structures, Inc. of W. Va., 408 S.E.2d 41, 44
(W. Va. 1991).

Plaintiffs claim that NYLIC interfered with the
settlement agreement by accepting administrative fees in
connection with the proposed transfers and by requiring
Terrence to enter into stipulations to waive the anti-
assignment provision of the agreement. (Complaint ¶ 106.)
Defendants argue that the claim should be dismissed because
Plaintiffs had no interest in the payments and because NYLIC
did not improperly interfere with Plaintiffs' rights by
allowing the courts to decide whether to approve the
transfers. (Motion at 3.)

The Restatement (Second) of Torts lists conduct such as
threats of physical violence, fraudulent misrepresentations,
threats of civil suits, threats of criminal prosecution,
unlawful conduct, economic pressure, and violations of
business ethics or customs among the types of conduct that
may be deemed improper interference. Restatement (Second) of
Torts § 767 cmt. c; see also Duggin v. Adams, 360 S.E.2d 832,
836 (Va. 1987) (explaining that improper methods of
interference may include "fraud, misrepresentation or deceit,

defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship" or "unethical conduct").

While it is possible that NYLIC engaged in tortious interference with the settlement agreement, the Court concludes that, at present, there are insufficient factual allegations supporting the claim. The Complaint currently only alleges that NYLIC required Terrence, who suffers from various permanent injuries, to sign stipulations waiving the anti-assignment provision; that Terrence was not represented by an attorney; and that Terrence has no recollection of signing and believes his signature may be a forgery. (Complaint ¶ 52.) But simply asking Terrence to sign a stipulation, even if he were without counsel, does not rise to the level of improper interference without more. See Restatement (Second) of Torts § 767 cmt. c (explaining that inducement by permissible means, like "persuasion and offers of benefits" are generally not tortious, but "doing so by [] predatory means" such as "physical violence, fraudulent misrepresentation and threats of illegal conduct" is). While Plaintiffs may be insinuating that improper conduct occurred by mentioning that Terrence believes his signature "may be a forgery" (Complaint ¶ 52 n.7), this suggestion, made in passing in a footnote and using equivocal language, lacks

enough detail to support a reasonable inference of improper conduct. <u>See</u> <u>Zherka v. Amicone</u>, 634 F.3d 642, 647 (2d Cir. 2011) (holding that allegations pled in a "most cursory fashion . . . are insufficient to establish facial plausibility under the standard set by" Twombly, 550 U.S. at 556).

In short, without more concrete representations of unlawful actions or conduct that deceived or misled Terrence, the current allegations are insufficient to allow the Court to conclude that a plausible claim of tortious interference has been pled. The Court accordingly dismisses Plaintiffs tortious-interference claim.

## IV.  ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation to dismiss the Complaint of plaintiffs Louise and Phillip Taylor pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 11) is **GRANTED** and the Complaint is dismissed without prejudice.


**SO ORDERED.**

Dated:    New York, New York
          9 February 2021

                                        Victor Marrero
                                           U.S.D.J.